[Civ. No. 21097.   Second Dist., Div. One.   Oct. 31, 1955.]

HOMER A. HANSEN et al., Respondents, v. LESTER DANIELSON et al., Appellants.

Homer L. Martin and Henry J. Bateman for Appellants.

Braeme E. Gigas for Respondents.

DORAN, J.—This action by respondents seeks to quiet title to an alleged right of way over appellants' land located in the community of Sunland about a mile north of Foothill Boulevard.   The westerly boundary of Lot 2 on which appellants' land is located, and the easterly boundary of Lot 3 where respondents' parcel is situated is a common line.
Under date of August 27, 1923, S. R. Deacon and wife conveyed to Gavin W. Craig and wife, Lot 2 involved herein, and a portion of Lot 1 not here involved, "Reserving to the grantor, however, the right of way across the above described property over roads now in use to the Government

land and to Lot Three (3) in Section Eleven (11), Township Two (2) North, Range Fourteen (14) West, S.B.M., provided that the right of way to the said Lot Three (3) may be changed by the Grantee if it shall still be kept so as to provide reasonably convenient access thereto.''

By deed dated May 18, 1944 the Deacons conveyed Lots 1 and 3 and also ''an easement for road purposes over Lot 2,'' to the respondents Hansen, such easement being described as ''the same easement as reserved in the deed'' of August 27, 1923. On July 7, 1947, a portion of Lot 2 was conveyed to the appellants Danielson.

The record discloses evidence in support of the trial court's findings that as far back as 1904 there had been a roadway across the Danielson portion of Lot 2 leading to Lot 3, and that up to 1952 this way had been used by landseekers, land commissioners, surveyors, engineers, hunters with wagons and automobiles, miners, farmers, equestrians, moving picture companies, and others. When the Danielsons built a home on Lot 2, no fence or gate was built and the Hansens continued to travel across the Danielson property without interruption. The Hansens were ordered off the Danielson property for the first time in 1952.

Before taking testimony the trial judge and all parties interested visited and inspected the property in question. During the trial some 24 witnesses testified and 20 exhibits were received in evidence. Judgment was rendered in favor of the Hansens, respondents herein.

In explanation of the original reservation of ''the right of way across the above described property over roads now in use to the Government land and to Lot Three,'' the trial court found that ''the term 'government land' referred to and meant the Angeles National Forest Lands in the San Gabriel Mountains and that the phrase ''over roads now in use to the government lands'' referred to and meant a road which, in 1923, and for many years prior thereto, was located in or near the bottom of a canyon shown on maps as Ebey Canyon; ran from the point where said canyon intersected Tujunga Wash or Canyon and then traversed a portion of said Lot 2 northerly to the Angeles National Forest.'' The court also found that the location of such right of way reserved in the 1923 deed, ''was not at any time changed.''

The trial court further found that ''When said defendants acquired said portion of Lot 2 they did so with actual and constructive knowledge of the existence of the West Mesa

Road and the right of plaintiffs to freely use the same . . . to and from Lot 3 which plaintiffs own"; and that "the first time any of the defendants barred plaintiffs from using the West Mesa Road across their property to Lot 3 was in the early months of 1953."

Appellants' contention that "There is no evidence to support the findings of fact, conclusions of law and judgment," cannot be sustained. On the contrary the record discloses abundant and substantial evidence in support thereof. The rule as stated in *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689], and elsewhere is that "In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle . . . that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached. . . . The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict." A number of witnesses testified to use of the roadway in question over a long period of years.

The contention that plaintiffs' complaint does not state facts sufficient to constitute a cause of action is likewise without merit. As stated in respondents' brief "the complaint alleges with sufficient certainty that the right-of-way referred to in the 1923 deed passed over that portion of Lot 2 later owned by appellants Danielson." ▆ Moreover, as respondents point out, the record reveals that at all stages of this case prior to appellants' opening brief, including a pretrial conference, the complaint was treated as sufficiently stating the issues upon which the case was tried.

It is true, as stated by the appellants, that "An easement may be extinguished by non-use and abandonment," and also that it may be extinguished "by the use of the servient estate in a manner adverse to the exercise of the easement for the period required to give title to land by adverse possession." However, a survey of the record indicates that there is substantial evidence to the effect that there was no such non-use or abandonment. While it is true that defendants presented evidence as to the building of a fence in 1948, there was likewise evidence that appellants freely used the roadway until 1953. The rule of appellate review in reference to conflicting evidence has been herein previously stated.

Other points raised are likewise predicated upon an interpretation of the evidence favorable to appellants' contentions, whereas, under the long established rule hereinbefore mentioned, the trial court's interpretation must be adopted where the judgment is supported by any substantial evidence. This is true in respect to appellants' contention that the claimed easement was superseded by a 1947 easement deed arrangement between respondents and other parties which under respondents' theory related to property east of the Danielson property and not involved herein.

There is no merit to appellants' other contentions to the effect that the judgment is indefinite and uncertain "as to the property affected and location of the easement"; and that neither the Deacons who created the original easement, nor the parties to whom the easement was given, "intended, used or in any manner conducted themselves in such a manner as to indicate the existence of a road over the property now owned by the defendants Danielson." The judgment as rendered is sufficiently certain to identify the easement in question. The trial court's conclusion, contrary to the other point mentioned above, is supported by substantial evidence.

Respondents concede that appellants are correct in the contention that the judgment is at fault in not preserving to the servient estate the privilege created in the 1923 deed "that the right of way to the said Lot 3 may be changed by the Grantee if it shall be kept so as to provide a reasonably convenient access thereto," since a judgment quieting title cannot enlarge the grant made by the parties.

The judgment is modified by adding the following sentence at the end of said judgment: "As provided in the 1923 deed creating said easement, 'the right of way to the said Lot 3 may be changed by the Grantee if it shall be kept so as to provide a reasonably convenient access thereto,'" and as so modified is affirmed, the parties to bear their respective costs on appeal.

White, P. J., and Drapeau, J., concurred.